WILLIAM CALHOUN, *Appellant,* v. J. W. RUSS, *Appellee.*

Opinion Filed June 2, 1921.

1.  In a suit to foreclose a chattel mortgage to secure a store account, where the defendant in a petition sets out and shows the Court that the discovery and production of the books and accounts and papers of the complainant is necessary to enable the defendant to make a correct and definite an-

swer to the bill, and asks that the complainant deposit them with the clerk of the Court a sufficient length of time for the defendant to examine them and prepare an answer to the bill, it is error for the court to refuse to make an appropriate order to permit the defendant to avail himself of the data contained in such books of accounts and papers.

2. Where a series of notes secured by chattel mortgages are given from year to year, the new one for the balance due on the old, with additional amounts charged to the mortgagor between the date of executing the old and new mortgage, in a suit to foreclose the last mortgage, the defendant has a right to set up in his answer and prove, everything in relation to all transactions between the complainant and the defendant from the date of the first transaction for which first the note and chattel mortgage was given.

3. The giving of a note and chattel mortgage to secure a store account covering a period of a year is not conclusive that the amount stated in the notes and mortgages is correct, and is not an acknowledgment of the amount of the indebtedness, and where the answer denies that the amount stated in the note is the amount of the indebtedness of the mortgagor, he has the right to show that the amount stated in the mortgage is not correct, and for this purpose he may require the production of the books of account of complainant.

An Appeal from the Circuit Court for Jackson County; C. L. Wilson, Judge.

Decree reversed.

D. L. McKinnon, for Appellant;

Moses Guyton, for Appellee.

BROWNE, C. J.—J. W. Russ filed a bill to foreclose a chattel mortgage against William Calhoun. The mortgage sought to be foreclosed was the last of three such

mortgages given to secure the payment of an amount of money stated in each note, "and all other indebtedness" that the mortgagor might "contract with or owe" to Russ "for advances of money or other things of value, and all other accounts" that he may become indebted to the said Russ, "together with interest and attorneys fees."

An amendment to the answer denied that the "notes and mortgage signed by defendant on the 21st day of January, 1914, for $282.51 was given for an account of 1913, or that the note and mortgage on January 1st, 1915, for $300.46, or that the note and mortgage on the 15th of September, 1916, for $331.46 attached to the bill, or either of them, were given for an account of 1913 or for any other account due by defendant to complainant."

The defendant avers that his first business transaction with Russ in 1910 was to get him to pay off and take up for him a decree of foreclosure of mortgage which C. C. Liddon & Co., as assignee, held against certain real estate in which the defendant had an interest; that the amount due on the foreclosure decree was $250.00, and that the complainant, Russ, charged him $125.00 as a bonus for making the loan, and charged him 10% interest on the aggregate amount of $375.00.

The answer avers that this transaction was usurious, and prays that if it be so found, that the defendant be given the benefit of the usury act, and that he "recover double the amount so paid to be deducted from the principal of complainant as the statute in such case provides."

The defendant denied that on the 21st day of January, 1914, he was indebted to the complainant in the sum of $282.51 as charged in the bill of complaint, and avers:

"While it may be that upon a just and true accounting between complainant and himself at that time, he was indebted to the complainant a few dollars if complainant was allowed the exorbitant, usurious interest he charged defendant for taking up a decree of foreclosure against the place he was living on, but he denies that there was anything due if nothing but lawful interest is allowed him."

He also asked that his answer be considered in the nature of a cross-bill, and that it be heard at the same time with his said suit now pending in this court for an accounting against complainant as they involve substantially the same issues."

The answer set out all the transactions between the complainant, Russ, and the defendant, from the time Russ advanced the money to pay off the foreclosure decree, to the giving of the note and chattel mortgage sought to be foreclosed, and showed that the transactions were so interlocked that an equitable adjustment could not be made unless all the facts and circumstances connected with them were before the court for its consideration.

Among the items on the statement submitted by the complainant to prove his account are several for $50.00 each, for rent of the property covered by the decree of foreclosure that Russ furnished the money to take up for and at the request of defendant, for which Russ charged him a bonus of $125.00, and 10% interest on both principal and bonus. In order for the defendant to show that these items of $50.00 for rent were improper, the defendant should have been permitted to set up in his answer everything in relation to Russ' paying off the decree of foreclosure at defendant's request. We can-

not see how the rights of the parties can be equitably determined unless all these transactions are submitted to the court for adjudication at the same time.

The Act of 1915 provides: "The answer must state, in short and simple form, any counter-claim arising out of the transactions which is the subject-matter of the suit, and may, without cross-bill, set out any set-off or counter-claim against the plaintiff which might .be the subject of an independent suit in equity against him, and such set-off or counter-claim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment in the same suit, both on the original and cross-claims." Sec. 3120, Rev. Gen. Stats. of Florida,1920.

Exceptions were filed to parts of the answer, and certain parts of it were stricken, but we are unable to distinguish the parts that were stricken, as the motion and the chancellor's order describe them as beginning at certain lines on certain pages and extending to certain lines on other pages. It is apparent that the paging and lines in the transcript of the record are not the same as they are in the original papers, so the stricken parts cannot be distinguished.

We have, however, given the answer careful consideration, and find nothing impertinent, irrelevant, or that should have been stricken, and find that the court erred in striking any portion of it.

After filing his answer, the defendant filed a petition setting out that having placed implicit confidence in the complainant he kept no accounts or records himself of his transactions with Russ, but he trusted him to keep the accounts and transactions fairly and correctly, and

that although he had filed an answer in the cause, it was indefinite as to amounts and dates admitted and amounts denied, but that it was the best he could make without data in the possession of the complainant.

The petition asked the discovery and production by the complainant "of each of his books of account, containing all of the debits and credits itemized against and for petitioner from the first of January, 1911, to the last of December, 1917, and a decree of foreclosure of mortgage against Jerry Robertson and his wife, in favor of W. H. Milton, which he obtained from C. C. Liddon & Co., and which is in his possession and control." The petitioner further stated that he was advised by counsel and verily believed "that the discovery and production of said books and accounts and papers is necessary to enable him to make a correct and definite answer to the bill in said cause."

He prayed that the court require the complainant to deposit with the clerk of the court the books of accounts and papers a sufficient length of time for petitioner to examine them and prepare an answer to the bill.

The court denied the motion as to the books of account and other papers except the decree of foreclosure, which it ordered the complainant to file "among the papers in the cause in which it is a proper paper."

We think the petition made a sufficient showing to warrant an order requiring the complainant to exhibit to the defendant or his counsel, or an appropriate order to permit the defendant to avail himself of the data contained in the complainant's books of account and papers showing all transactions between the complainant and the defendant from the first of January, 1911, to the last

of December, 1917, and the court erred in denying the petition.

The defendant denied the amount of the consideration stated in the notes, and sought to show that there were items in the account that were improperly charged to him. During the examination of the witness Daffin, who was Russ' bookkeeper, application was made by counsel for defendant to require the books of original entry to be produced, which was denied and exception noted. This is the basis of the second assignment of error, which we find well taken, and the court erred in not requiring the books to be produced.

Assignments of error are based upon the court sustaining objections to the defendant testifying about Mr. Russ taking up the foreclosure decree—the agreement between them in relation thereto—the payments made thereon, and other questions seeking to bring out the entire transaction.

This testimony may have been immaterial upon the issue then pending, but upon another hearing, with the stricken parts of the answer before the court, testimony would be proper to show all the transactions between Russ and Coleman from the time Russ paid the foreclosure decree until the instant suit was brought.

The fourth assignment of error is predicated upon a remark made by the judge when the defendant was being interrogated as to items on the account offered in evidence by the complainant.

Counsel for appellant argues that the remark of the judge showed that he was prejudiced against the defendant and "that the prejudice of the judge would outweigh with the court the sworn testimony of the defendant."

In a cause being tried by a jury such a remark by the court would be ground for reversal, but may not be where the cause is being tried by the judge.

It is not necessary for us now to pass upon the question of the prejudice of the judge as raised in this assignment. The case will be reversed for the errors indicated herein, and will go back for further proceedings and another hearing, at which time defendant will have the right to take such steps with regard thereto as he may be advised.

The decree is reversed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.